UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL E. BOSSE, | |
| Petitioner, | Case No. 1:21-cv-00256-AKB |
| vs. | **MEMORANDUM DECISION AND ORDER** |
| WARDEN TYRELL DAVIS, | |
| Respondent. | |

In this federal habeas corpus matter, Petitioner Michael E. Bosse (Petitioner) filed an original Petition and a "Second Amended Petition." (Dkts. 3, 14). Because of Petitioner's pro se status, the Court construed the pleadings together. (*See* Dkt. 15 at 1). On January 4, 2023, United States District Judge B. Lynn Winmill granted Respondent Warden Tyrell Davis's partial summary dismissal motion. (Dkt. 45, 26). Judge Winmill determined that Petitioner's claims were subject to dismissal on procedural default grounds except for Claim 1 in the original Habeas Corpus Petition. Claim 1 alleged that Marco DeAngelo, the second public defender to represent Petitioner, rendered ineffective assistance of counsel when he "refused to file a Motion to Withdraw the Guilty Plea after being requested to do so." (*See* State's Lodging D-1 at 2; Dkt. 3 at 7; Dkt. 14; Dkt. 45 at 9-10.) The Court concluded that Claim 1 had been fully exhausted on state post-conviction review. This claim is now ripe for adjudication.

**MEMORANDUM DECISION AND ORDER - 1**

## PRELIMINARY MATTERS

At issue is whether Petitioner can rely on new evidence in this proceeding. Petitioner's state criminal case history is relevant to that question. Petitioner was charged with four counts of lewd and lascivious conduct with a minor under age sixteen, for engaging in sexual acts with his eleven-year-old daughter, S.L. Under a plea agreement with the State, he changed his plea to guilty of a single count with the other three counts to be dismissed.

At the change of plea hearing, the state court reviewed with Petitioner the terms of the plea agreement specified in the Guilty Plea Advisory Form (hereafter "Record Plea Form") (State's Lodging A-1 at 52-59). (*See* State's Lodging A-2 at 5-24). Petitioner testified in detail about the factual basis for the crime and that his plea was voluntary; he was not coerced to plead guilty; he was not made any promises; he understood the terms of the plea agreement; he understood the court was not bound by the State's recommendations; he knew he could be sentenced up to life in prison; and he knew he could not withdraw his plea if he did not agree with the sentence pronounced. He affirmatively answered that he "read every word contained in this guilty plea form including any additional writings that [had] been added," and that he "[understood] every word, sentence, phrase and question contained in the guilty plea form." (State's Lodging A-2 at 13-14) (internal page citations). Further, the court asked Petitioner's first public defender, Ian Thompson, if he had fully discussed with Petitioner all his "rights, defenses, and possible consequences of a plea of guilty"; Mr. Thompson said he had; Petitioner did not disagree. (*Id*. at 10-11).

Among other necessary findings at the hearing, the state court found that "Defendant understood the contents of the guilty plea advisory form. There's a factual basis for the guilty plea.

**MEMORANDUM DECISION AND ORDER - 2**

The guilty plea was knowingly, intelligently, and voluntarily made." (*Id*. at 22-23). Petitioner was found guilty of Count Two, and the other three counts were dismissed. (*Id*. at 23).

After the change of plea hearing, Mr. Thompson withdrew from representation due to personal health issues. Mr. DeAngelo assumed representation of Petitioner. At the sentencing hearing, the State recommended a term of imprisonment of twelve years fixed with eighteen years indeterminate. (State's Lodging A-1 at 30, 34, 37). Mr. DeAngelo recommended a sentence of four years fixed with eleven years indeterminate, with immediate release under a retained jurisdiction scheme. (*Id*. at 42-43). The Court adopted the State's recommendation as the sentence.

After sentencing, Petitioner seemed to assert *both* that the parties never came to a plea agreement at all *and* that they came to a different plea agreement which was not presented to the court. Rather than being contradictory, Petitioner appears to argue that the parties reached a different plea agreement which allowed Petitioner to repudiate the agreement if he was not sentenced to the term *he* proposed.

Petitioner alleges that the parties' actual agreement was documented on a "Form 11F, State Plea + Bargain Agreement" (Dkt. 49 at 1-2), which is not a part of the state court record (hereafter "Missing Plea Form"). A Rule 11 plea agreement differs from the Record Plea Form, which is nonbinding on the sentencing court but binding on the parties. In contrast, a Rule 11 agreement is binding on the sentencing court but not binding on the parties: if the sentencing court refuses to adopt the plea agreement terms as the sentence, the defendant is free to withdraw the guilty plea. *See* Idaho Criminal Rule 11(f)(3)&(4). Petitioner seems to think he agreed to a plea agreement that was binding on the court but not binding on the parties.

**MEMORANDUM DECISION AND ORDER - 3**

Petitioner explains that he told Mr. Thompson just prior to the change of plea hearing: "No Rule 11 agreement with prosecution, it was to be argued in court for 5 years, + 4 counts down to 1, or no deal!" Therefore, Petitioner, reasons, "There never was an agreement to breach . . . . Rule 11 not written, or agreed to by both parties." (State's Lodging C-1 at 30) (spelling corrected, internal citation omitted).

Plaintiff states that Mr. Thompson wrote Petitioner's desired terms on the Missing Plea Form: "we will argue for less than 5 as well, but ultimately we will get our 3 to 5 years medium rate, or go to trial, + rethink plea of guilty + drop to 1 count." (Dkt. 81 at 17). Mr. Thompson then responded to Petitioner's terms by saying, "Good, Let's do this—We have to have our plea accepted at all costs, lie if you have to." (*Id*.) (spelling corrected). Petitioner asserts: "This was all done in a 10 minute window, standing handcuffed in front of the court room doors, the day of court, forced decision. No time! I was tricked." (*Id*.). Petitioner asserts he lied throughout the plea colloquy in accordance with Mr. Thompson's advice. (State's Lodging C-1 at 30).

As a result of this new version of facts which surfaced after the sentencing hearing, Petitioner asked Mr. DeAngelo to file a motion to withdraw Petitioner's guilty plea. The record reflects that Mr. DeAngelo declined via a letter that recites the high standard of "manifest injustice" for attempts to withdraw a guilty plea after sentencing, stating: "After reviewing the sworn written guilty plea form it appears you acknowledged all of these rights. That you were pleading guilty without coercion or influence. That you also understood the consequences of pleading guilty." (State's Lodging C-1 at 90).

On post-conviction review, among other claims, Petitioner asserts that Mr. DeAngelo was ineffective for not filing a motion to withdraw Petitioner's guilty plea. (*See id*.). The State filed a

**MEMORANDUM DECISION AND ORDER - 4**

motion for summary dismissal of the post-conviction petition, alleging: the "guilty plea" *was* written; Petitioner was examined by the court regarding the written guilty plea advisory form when he pleaded guilty; the parties did *not* enter into a Rule 11 agreement; and Petitioner's claim was disproven by the record. (*Id*. at 209). The State referenced the Record Plea Form and the hearing transcripts.

In response, Petitioner's appointed attorney in the post-conviction matter, Layne Davis, argued that the claims should not be dismissed because Petitioner's affidavit alone, containing the foregoing factual allegations, provided sufficient facts to warrant an evidentiary hearing. (*Id*. at 221). No affidavits from defense counsel or the prosecutor were offered. No depositions were taken. The Missing Plea Form was never produced. (*See* State's Lodging C-1).

After reviewing the briefing, the state district court granted the State's motion to dismiss in one sentence, without elaboration on the grounds for dismissal. (*Id*. at 230). On appeal, Petitioner's post-conviction appellate counsel, Dennis Benjamin, presented an ineffective assistance claim based on Mr. DeAngelo's failure to file the motion to withdraw the guilty plea, based only on Petitioner's factual allegation that "I wanted to retract my guilty plea, but he [Mr. DeAngelo] said I can't. No!" (State's Lodging D-1 at 4). There was no argument in the appellate briefing that a Rule 11 plea agreement was missing; the attorneys had presented the wrong plea agreement; or Mr. Thompson had advised Petitioner to lie to the judge at the change of plea hearing. (*See id*. at 6-11).

In this federal action, the Court granted Petitioner an extension of time to obtain the Missing Plea Form from the public defender's office or obtain affidavits from the attorneys to show that the document once existed but had been lost or destroyed. Petitioner recently provided

**MEMORANDUM DECISION AND ORDER - 5**

a partial plea agreement advisory form (hereafter "Partial Form") that he asserts is the Missing Plea Form documenting the true plea agreement of the parties. (Dkts. 80-2 at 23-24; 81-2 at 83-84). It is not apparent where Petitioner obtained the Partial Form.

Respondent argues that the Partial Form may be fraudulent. Indeed, the Partial Form's contents indicate it is from a different case than Petitioner's. The Partial Form does not contain a case heading or signature page. The criminal charge listed on it does not match the crime to which Petitioner pleaded guilty in this case—the Partial Form states "sexual abuse," but Petitioner's charged crime was "lewd and lascivious conduct." (Dkt. 80-2 at 23). The Partial Form also does not address the disposition of Petitioner's three other dismissed counts but instead says that the State will dismiss one other count and agree not to file any further charges.

Further, the Partial Form provides that a person other than the victim in this case, "H.M.," may make a victim impact statement. (State's Lodging A-2 at 32). It is unclear who H.M. is and why the person would be permitted to make a victim impact statement. In the sentencing hearing, Petitioner objected to his other daughter, "R.A.," submitting a victim impact statement in S.L.'s case, although he stated he did not object to "the entirety of the presentence investigation which covers extensively the materials with her [R.A.]." (*Id*. at 28). R.A. also claimed to have been repeatedly sexually molested by Petitioner from the ages of seven to fourteen. (*Id*. at 32). The victim's mother's name is Charmaine Simonson, which also does not correspond to "H.M." (State's Lodging C-1 at 26).

Finally, the Partial Form shows that in the *Plea Agreement and Recommended Sentence* paragraph the State would recommend six to twelve years of incarceration. (*Id*.). In a blank space of the Partial Form, Petitioner has added: "*Other*: Defendant agrees to 4 to 6 years fix, with a

**MEMORANDUM DECISION AND ORDER - 6**

contingency clause, if not sentenced to 6 years, he goes to trial. Option." (*Id.*). On the next page, which obviously is not the last page because it ends in the middle of a sentence, Petitioner has written, "I agree," and signed the Partial Form, but there is no date. (*Id.* at 24).

In contrast, the Record Plea Form shows that Petitioner agreed to plead guilty to one count of lewd conduct with a minor under sixteen in exchange for the State agreeing "not to recommend any more than 12 + 18 = 30," with Petitioner "free to ask for any lesser sentence." (State's Lodging A-1 at 52-59, 54). In addition, the State dismissed all three additional lewd conduct charges involving the same victim. The Record Plea Form states that the recommendations are not binding and that Petitioner will not have the right to withdraw his guilty plea; the Partial Form states the opposite. (*Compare* State's Lodging A-1 at 55 *with* Dkt. 80-2 at 23). The Record Plea Agreement bears Petitioner's signature and Mr. Thompson's signature.

Against this solid record, insufficient evidence supports Petitioner's contentions that the Partial Form was the actual plea agreement and that his defense counsel and the prosecutor conspired to force him to plead guilty to the Record Plea Agreement that was presented to and accepted by the sentencing court.

Specifically as to cases in which convicted felons challenge their guilty pleas, the United States Supreme Court has observed:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, *constitute a formidable barrier in any subsequent collateral proceedings*. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are *contentions that in the face of the record are wholly incredible*.

**MEMORANDUM DECISION AND ORDER - 7**

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (emphasis added).

The Court agrees with Respondent that it appears the Partial Form is from a different criminal case. The Partial Form does not match the facts of this case because it is inconsistent with Petitioner's testimony under oath at the change of plea and because Petitioner failed to ask any questions or make objections about plea agreement discrepancies at the change of plea hearing and sentencing hearing.

The Court will not make a final factual determination on these issues or entertain any further efforts to explain the Partial Form or permit it to be considered in this action because Petitioner has not shown that he was diligent in attempting to develop the facts in state court. And, even though Petitioner included his version of the facts in his pro se petition for post-conviction relief, they were not presented to the Idaho appellate courts, and, hence, cannot be considered here for the first time.

The Court previously informed Petitioner that the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA), amending Title 28 U.S.C. § 2254, generally prohibits evidentiary hearings and the introduction of new evidence in any form except in very limited circumstances. Generally, the merits of the claims in a federal habeas corpus petition are decided on only the factual record that was before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011); *see also* 28 U.S.C. § 2254(e)(2).

An exception to this bar is set forth in 28 U.S.C. 2254(e)(2), which provides that, "if the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless he meets several stringent elements set forth in subsections (A)(i) or (ii) and (B). The statutory phrase "failed to develop the factual basis

**MEMORANDUM DECISION AND ORDER - 8**

of a claim" means that "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id*. at 437.

On post-conviction review, Mr. Davis requested an evidentiary hearing on Petitioner's alleged facts supporting an ineffective assistance of counsel claim regarding the failure to file a plea withdrawal motion, but the briefing did not mention the existence of a Partial Form. (*See* State's Lodging C-1 at 223). Under Idaho law, bare or conclusory allegations, unsubstantiated by any fact, are inadequate to entitle a petitioner to an evidentiary hearing. *Roman v. State*, 873 P.2d 898, 901 (Idaho Ct. App. 1994). In particular, I.C. § 19-4903 provides particular pleading requirements for a post-conviction petition:

> Facts within the personal knowledge of the applicant shall be set forth separately from other allegations of facts and shall be verified as provided in section 19-4902. Affidavits, records, or other evidence supporting its allegations shall be attached to the application or the application shall recite why they are not attached.

Petitioner did not present the Partial Form to the state district court as an attachment to his post-conviction petition, nor did he state why the Partial Form was not attached, as required by the statute. (*See* State's Lodging C-1). Petitioner failed to comply with the state statutory provisions for presentation of sufficient facts supporting post-conviction claims, having made only bare and conclusory allegations that were contrary to his own sworn testimony in open court. He was not entitled to an evidentiary hearing on post-conviction review.

There is no question that if Petitioner knew of the Partial Form from the time it was allegedly signed, as well as throughout the change of plea and sentencing hearings, he did nothing

**MEMORANDUM DECISION AND ORDER - 9**

to present it to any state court at any time. Nothing in the record suggests that Petitioner could not have raised the issue immediately in the state court, including as early as the change of plea colloquy. At the time of the change of plea, Petitioner was a fifty-seven-year-old adult who had not ingested any medications altering his cognition and who had a high school education and six years of military training and education. Yet, he did not question or correct the judge on the facts that he now asserts he knew were false. In particular, he stated under oath that he understood he would not be able to withdraw his guilty plea if the judge sentenced him to a term greater than the State recommended. He did not ask for an in camera session with the judge to discuss that the plea agreement being discussed was all wrong and that his attorney coerced him, tricked him, and told him to lie under oath. He did not ask for a continuance because he believed there was an error or confusion between what he understood and what the judge stated the agreement and effect of the agreement were at the hearing. Rather, his version of events is he simply lied and proceeded to see if he would receive a five-year sentence at the next hearing.

The Court concludes that Petitioner was not diligent during his state court proceedings in presenting evidence to the state appellate courts. He has not met the requirements of § 2254(e)(2). Therefore, he cannot introduce the missing or allegedly falsified documents in federal court to support the merits of Claim 1.

REVIEW OF MERITS

### 1. Standard of Law

The Idaho Court of Appeals rejected the merits of Claim 1 on post-conviction review. Therefore, the AEDPA standard of law applies, and Petitioner must show that the decision was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984).

*Strickland* dictates that, to succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was deficient because it below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing trial counsel's performance under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*.

In assessing prejudice under *Strickland*'s second prong, a court must find that, under the particular circumstances of the case, there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both deficient performance and prejudice to prove an ineffective assistance of counsel claim. *Id*. at 697. On habeas review, the court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id*.

The foregoing standard, giving deference to counsel's decisionmaking, is the de novo standard of review. Another layer of deference—to the state court decision—is afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below

**MEMORANDUM DECISION AND ORDER - 11**

> *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S. Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011).

The "unreasonable application" standard has been explained in the following terms: if fairminded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Richter*, 562 U.S. at 101. The Supreme Court emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102 (internal citation omitted).

Within an ineffective assistance of counsel claim, the Court also considers the law governing the subject of the alleged deficient performance—here, the state law standard for withdrawal of a guilty plea after sentencing.

## 2.  Discussion

Claim 1 is whether Mr. DeAngelo performed ineffectively when he declined to file a motion to withdraw Petitioner's guilty plea after being requested to do so. The only facts Petitioner provided in his briefing before the Idaho Court of Appeals was that "I wanted to retract my guilty plea, but he [Mr. DeAngelo] said I can't. No!" (State's Lodging D-1 at 4).

**MEMORANDUM DECISION AND ORDER - 12**

As to the deficient performance prong of *Strickland*, the Idaho Court of Appeals determined that, "at best, Bosse's claim indicates that he had a discussion with his defense counsel regarding his guilty plea and his counsel told him he could not do so." (*Id.*).

Though Mr. DeAngelo was not counsel during the change of plea phase of proceedings, he had access to the hearing transcript, which showed: Petitioner acknowledged under oath in open court that the sentencing judge was free to disregard the State's recommendations and sentence him to any term, including the maximum term of life, and, if the court did so, he did not have the right to withdraw his plea on that basis. (State's Lodging C-1 at 180). Petitioner also agreed that the terms of the plea agreement submitted in the Record Plea Form accurately reflected the parties' agreement. (*See* State's Lodging A-2 at 7). Petitioner's later argument that there was no agreement or there was a different agreement is "in the face of the record . . . wholly incredible," as the United States Supreme Court described similar circumstances in *Blackledge*, 431 U.S. at 74.

As Mr. DeAngelo's letter noted, because Petitioner requested to withdraw his plea *after* entry of judgment, he had to show "manifest injustice" occurred as a result of failure to file the motion. I.C.R. 33(c). "Manifest injustice will be found if the plea was not taken in compliance with the constitutional due process standards requiring that a guilty plea be entered into voluntarily, knowingly, and intelligently." *State v. Heredia*, 156 P.3d 1193, 1196 (2007) (defendant permitted to withdraw plea where he was not informed before his plea to involuntary manslaughter was entered that he may be ordered to pay child support for the victim's five minor children); *see State v. Flowers*, 249 P.3d 367, 370-71 (Idaho 2011) (no manifest injustice shown because the State did not breach the plea agreement).

**MEMORANDUM DECISION AND ORDER - 13**

Here, Petitioner had several opportunities to tell the state court—both at the change of plea hearing and at sentencing—that he thought the plea agreement was for twelve-and-eighteen years or four-and-eleven years and that he thought the terms were binding on the court but not binding on himself, but he did not say anything. Petitioner does not appear to have been under any legal disability to show he did not understand what occurred at the change of plea hearing.

Based on all the foregoing facts and the law, there is not a reasonable probability that a motion to withdraw the guilty plea would have been successful. Therefore, Mr. DeAngelo's performance was not defective, especially under the doubly-deferential habeas corpus standard of *Richter*.

As to the prejudice prong of *Strickland*, the Court of Appeals reasoned: "Bosse did not allege or support with facts the allegation that there was a reasonable probability his motion to withdraw his guilty plea would have been granted." (State's Lodging D-4 at 6). For the same reasons that Mr. DeAngelo's performance was not deficient, this Court concludes no prejudice resulted from the failure to file the motion, because there was no "manifest injustice" apparent from Petitioner's facts, according to the *Heredia* factors.

### PETITIONER'S ALLEGATIONS OF ALTERED TRANSCRIPTS

In this action, Petitioner has also alleged that the transcripts and the state court record have been altered, falsified, or cut and pasted together by or at the direction of the state court judge to remove the judge's alleged emotional outbursts. (State's Lodging C-1 at 222-23). Petitioner has provided no supporting facts that the transcripts of his criminal case do not reflect what occurred at the hearings. He provides only portions of the record with his own comments written on the pages, and most of his notes show that he disagrees with the included content of the transcript,

**MEMORANDUM DECISION AND ORDER - 14**

rather than pointing to alterations or places where content is missing. No testimony of counsel, the prosecutor, or the court reporter supports his contentions. Nor does he point to any circumstantial evidence to support the alleged falsifications.

Further, these facts were not intended to support an ineffective assistance of counsel claim. Mr. Davis alluded to the allegedly altered transcripts and requested an evidentiary hearing to support a claim of "structural error," not ineffective assistance of counsel for failing to challenge the guilty plea. (*Id*.). In addition, the allegedly altered transcripts were never brought before the state appellate courts.

Petitioner knew of the alleged transcript errors when he first obtained a copy, likely shortly after it was prepared for direct appeal. The court reporter filed a "Notice of Transcript Lodged" on February 24, 2017. (State's Lodging A-1 at 80). Petitioner's direct appeal counsel filed the appellant's brief on October 2, 2017. (State's Lodging B-3). Petitioner obviously had the transcript before June 18, 2018, because he submitted his marked up copies at that time. (State's Lodging C-1 at 13). Yet, he has produced no corroborating evidence that the transcript had been altered to remove the judge's alleged emotional outbursts. (*Id*. at 222-23).

Moreover, this issue is not relevant to Claim 1. Petitioner is not entitled to bring forward new facts on habeas corpus review that were not presented to the state appellate courts.

## CONCLUSION

Petitioner has failed to show that the Idaho Court of Appeals' application of *Strickland* to the facts of Claim 1 was unreasonable, or that the opinion is contrary to United States Supreme Court precedent. To the extent that the Court has not explicitly addressed all of Petitioner's

**MEMORANDUM DECISION AND ORDER - 15**

arguments in this Order, the additional arguments are rejected. As a result, federal habeas corpus relief is unwarranted and this entire case will be dismissed with prejudice.

## ORDER

**IT IS ORDERED:**

1.  Petitioner's Motion to Review (Dkt. 77) is GRANTED to the extent that the Court has reviewed the permissible state court record in addressing the merits of Claim 1, and to the extent that it has considered whether the Partial Form should be considered in this habeas corpus action.

2.  Petitioner's Motion for Extension of Time (Dkt. 79) is GRANTED. Briefing is now closed.

3.  Petitioner's two Motions to Quash (Dkts. 80, 81) are DENIED. To the extent that these documents constitute Petitioner's reply, the arguments therein have been considered.

4.  Petitioner's Motion to Strike (Dkt. 84) is DENIED.

5.  The Petitions, and this entire action, are DISMISSED with prejudice.

6.  The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If Petitioner files a timely notice of appeal, the Clerk of Court shall forward a copy of the notice of appeal, together with this Order, to the United States Court of

**MEMORANDUM DECISION AND ORDER - 16**

Appeals for the Ninth Circuit. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: March 4, 2025

Amanda K. Brailsford
U.S. District Court Judge